**Daniel L. Lis**, OSB No. 162257
Email: dlis@buchalter.com
**Alexandra M. Shulman**, OSB No. 152784
Email: ashulman@buchalter.com
BUCHALTER, A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205
Telephone: 503.226.1191

**David J. Tecson,** *Pro Hac Vice* Admission
Email: dtecson@chuhak.com
**Adrienne M. Arlan,** *Pro Hac Vice* Admission
Email: aarlan@chuhak.com
CHUHAK & TECSON, P.C.
120 S. Riverside Plaza, Suite 1700
Chicago, IL 60606
Telephone: 312.444.9300

*Attorneys for Defendant Gene by Gene, Ltd.*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **JUSTIN BYRD BONNEAU**, and **ROBBIE BURGESS** individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>**GENE BY GENE, LTD. d/b/a FAMILYTREEDNA**, a Texas limited company,<br><br>Defendant. | Case No. 3:25-cv-00504-AR<br><br>**DEFENDANT'S MOTION TO DISMISS**<br><br>Pursuant to Fed. R. Civ. P. 12(b)(2) |

**TABLE OF CONTENTS**

**Page**


I. INTRODUCTION ........ 1

II. STATEMENT OF JURISDICTIONAL FACTS ........ 2

III. THIS COURT LACKS PERSONAL JURISDICTION OVER FT ........ 4

A. Legal Standard ........ 4

B. FT Is Not Subject to General Personal Jurisdiction ........ 5

C. Nor Do the Facts Establish Specific Personal Jurisdiction ........ 7

i. Bonneau Cannot Establish That FT "Expressly Aimed" its Conduct at Oregon ........ 9

ii. Bonneau Cannot Establish That The Claim “Arises Out Of Or Relates To The Defendant’s Forum-Related Activities” ........ 10

IV. THE CASE SHOULD BE SUBMITTED TO BINDING ARBITRATION IF THE COURT FINDS PERSONAL JURISDICTION ........ 12

A. Legal Standard ........ 12

B. The Parties Agreed to Arbitration ........ 13

V. IF THE COURT DOES NOT ENFORCE THE ARBITRATION PROVISION, THEN THE COURT SHOULD TRANSFER THE CASE TO THE SOUTHERN DISTRICT OF TEXAS ........ 15

VI. PLAINTIFF BURGESS SHOULD BE DISMISSED FOR AN INDEPENDENT REASON ........ 19

VII. CONCLUSION ........ 19




BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*,
571 U.S. 49 (2013) .......... 16, 17

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
874 F.3d 1064 (9th Cir. 2017) .......... 10, 11

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) .......... 14

*Boschetto v. Hansing*,
539 F.3d 1011 (9th Cir. 2008) .......... 5

*Bridgetown Trucking, Inc. v. Acatech Sols., Inc.*,
197 F. Supp. 3d 1248 (D. Or. 2016) .......... 12

*Briskin v. Shopify, Inc.*,
135 F.4th 739 (9th Cir. 2025) .......... 12

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*,
582 U.S. 262 .......... 5, 11

*Burri Law PA v. Skurla*,
35 F.4th 1207 (9th Cir. 2022) .......... 9

*Calder v. Jones*,
465 U.S. 783 (1984) .......... 9

*Chudner v. TransUnion Interactive, Inc.*,
626 F. Supp. 2d 1084 (D. Or. 2009) .......... 16

*CollegeSource, Inc. v. AcademyOne, Inc.*,
653 F.3d 1066 (9th Cir. 2011) .......... 6

*Crouch v. Ruby Corp.*,
639 F. Supp. 3d 1065 (S.D. Cal. Nov. 7, 2022) .......... 5, 10

*Daimler AG v. Bauman*,
571 U.S. 117 (2017) .......... 5, 6

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018) .......... 12



BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191

*Fatnani v. JPMorgan Chase Bank*,
No. 3:23-cv-712-SI, 2024 WL 3611899 (D. Or. Aug. 1, 2024) ............................................9

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021) ............................................................................... 5, 11, 12

*Fox v. Michael Berenis, Bootaholics, Inc.*,
No. 3:17-cv-2066-SI, 2018 WL 6313003 (D. Or. Dec. 3, 2018)............................................6

*Fteja v. Facebook, Inc.*,
841 F. Supp. 2d 829 (S.D.N.Y. 2012)........................................................................8

*Gray & Co. v. Firstenberg Machinery Co.*,
913 F.2d 758 (9th Cir. 1990) ..........................................................................4

*Hayden v. Shin-Etsu Handotai America, Inc.*,
80 F. Supp. 2d 1119 (D. Or. 1999)..........................................................................5

*Heiting v. Marriott Int'l, Inc.*,
743 F. Supp. 3d 1163 (C.D. Cal. 2024)....................................................................10

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
72 F.4th 1085 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 693 (2024) ........................................9

*Homestyle Direct, LLC v. Dep't of Human Servs.*,
311 P.3d 487 (Or. 2013).........................................................................15

*International Shoe Company v. Washington*,
326 U.S. 310 (1945) ..........................................................................5

*JPaulJones, L.P. v. Zurich Gen. Ins. Co. (China) Ltd.*,
533 F. Supp. 3d 999 (D. Or. 2021), *aff'd sub nom. JPaulJones, L.P. v. Zurich Ins. Co. (China) Ltd.*, 21-35365, 2022 WL 1135424 (9th Cir. Apr. 18, 2022) ................16, 17

*Kramer v. Toyota Motor Corp.*,
705 F.3d 1122 (9th Cir. 2013) ..........................................................................12

*M/S Bremen v. Zapata Off–Shore Co.*,
92 S.Ct. 1907 (1972) ..........................................................................16

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
647 F.3d 1218 (9th Cir. 2011) ..........................................................................9

*Moyer v. Chegg, Inc.*,
22-CV-09123-JSW, 2023 WL 4771181 (N.D. Cal. July 25, 2023).......................................15

*Oberstein v. Live Nation Entm't, Inc.*,
60 F.4th 505 (9th Cir. 2023) ..........................................................................14



BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191

*Paxton v. DISH Network, LLC*,
3:17-CV-01944-JE, 2018 WL 1947420 (D. Or. Apr. 24, 2018)................................ 17, 18, 19

*Pebble Beach Co. v. Caddy*,
453 F.3d 1151 (9th Cir. 2006) ..............................................................................4

*Phillips v. Neutron Holdings, Inc.*,
3:18-CV-3382-S, 2019 WL 4861435 (N.D. Tex. Oct. 2, 2019)...........................................15

*R Source Corp. v. Sealevel Sys., Inc.*,
722 F. Supp. 3d 1144 (D. Or. 2024)...................................................................12, 13

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) ....................................................................4, 6, 8, 9

*Siskiyou Properties, LLC v. Bennett Holdings, LC*,
13 Fed. App'x 553 (9th Cir. 2001)...............................................................................5

*Stewart Org., Inc. v. Ricoh Corp.*,
487 U.S. 22 (1988).............................................................................................17

*ThermoLife Int'l, LLC v. NetNutri.com LLC*,
813 Fed. Appx. 316 (9th Cir. 2020) ........................................................................10

*USAA Tex. Lloyds Co. v. Menchaca*,
545 S.W.3d 479 (Tex. 2018)..................................................................................15

*Walden v. Fiore*,
571 U.S. 277 (2014) ........................................................................................5, 9

*Yamashita v. LG Chem, Ltd.*,
62 F.4th 496 (9th Cir. 2023) ................................................................................11

**Statutes**

9 U.S.C. § 2 ....................................................................................................13

28 U.S.C. 1404(a) .............................................................................................16

28 U.S.C. §1404(a) ......................................................................... 1, 2, 17, 18

N.M.S.A. 1978, §§ 24-21-3 *et seq* ..........................................................................1

O.R.S. 192.531 *et seq.*..........................................................................................1, 14

**Rules**

Fed. R. Civ. P. 4(k)(1)(A)...........................................................................................4



BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191

Fed. R. Civ. P. 12(b)(2) .......... 1, 4

LR 7-1(a)(1)(A) .......... 1

Or. R. Civ. P. 4 .......... 5

Or. R. Civ. P. 4(N) .......... 2, 19, 20



BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191

**CERTIFICATE OF COMPLIANCE**

In compliance with LR 7-1(a)(1)(A), the parties made a good faith effort through a telephone conference to resolve the dispute and have been unable to do so.

**MOTION**

Pursuant to Federal Rule of Civil Procedure 12(b)(2), Defendant Gene by Gene, Ltd. d/b/a FamilyTreeDNA ("Defendant" or "FT") moves to dismiss the Class Action Allegation Complaint ("Complaint") filed by Plaintiffs Justin Byrd Bonneau ("Bonneau") and Robbie Burgess ("Burgess") (collectively, "Plaintiffs") for lack of personal jurisdiction. If the Court does not dismiss for lack of personal jurisdiction, then the Court should stay this lawsuit and compel arbitration. If the Court does not compel arbitration, then the Court should transfer venue to the Southern District of Texas under Defendant's Terms of Service and pursuant to 28 U.S. 1404(a). This Motion is supported by the following Memorandum of Points and Authorities, Declaration of Tat (Daniel) Au, Declaration of Alexander Zawisza, and exhibits attached to the foregoing Declarations, filed herewith.

**MEMORANDUM**

**I. INTRODUCTION**

The Complaint erroneously contends that FT violated genetic privacy statutes, specifically O.R.S. 192.531 *et seq.* and N.M.S.A. 1978, § 24-21-3 *et seq.* by disclosing Plaintiffs' genetic information to a third party. Setting aside the inaccurate Complaint allegations, FT lacks sufficient minimum contacts with the State of Oregon to sustain personal jurisdiction. FT therefore seeks dismissal of this action pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.[1]

---

[1] As demonstrated herein, FT has not discovered any records indicating that Burgess created an account, interacted with FT's website, or purchased a kit from FT. Burgess should be dismissed



BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191

Bonneau accepted FT's Terms of Service ("TOS") in 2023 ("2023 TOS"), which contained a binding arbitration clause. FT has demanded arbitration, and Bonneau has rejected the demand. If the Court determines that it possesses personal jurisdiction over the Bonneau, then FT respectfully requests an order that compels arbitration.

If the Court finds that the 2023 TOS govern this dispute, but declines to enforce the arbitration provision, then FT moves for transfer of the case to the Southern District of Texas under 28 U.S.C. §1404(a).

## II. STATEMENT OF JURISDICTIONAL FACTS

Plaintiffs allege that their genetic information was disclosed by FT "with third parties" such as Facebook. Complaint, Docket Entry 1, at ¶¶ 3, 18. The Complaint alleges that the prohibited disclosures of genetic testing information occurred because FT installed third party tracking tools (such as "Facebook's tracking pixel, the Meta pixel") on FT's website in Houston, Texas, causing the disclosure to Facebook, through the "implementation of the Meta Pixel" that Plaintiffs underwent a genetic test without Plaintiffs consent. *Id.***,** ¶¶ 46, 54.

The genetic testing results of Family Tree customers are effectively protected from disclosure by multiple layers of encryption, and there is no evidence that the Plaintiffs' genetic testing results were disclosed to a third party. (Zawisza Decl., ¶ 18.) All of the operations and technology for FT are located in the Houston office. (*Id.* at ¶ 5.) FT has no operations in Oregon, and employees of FT are not required to travel to Oregon in order to perform their jobs. (*Id.* at ¶ 7.) FT does not solicit business in Oregon, and FT does not employ any sales representatives in Oregon. (*Id.* at ¶¶ 8-12.) In addition, FT does not solicit business from Oregon customers, and it

---

for the independent reason that her presence violates Or. R. Civ. P. 4(N). Accordingly, this motion focuses on the allegations submitted by Bonneau.



BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191

has no registered agent in Oregon. (*Id.*) FT does not maintain bank accounts in Oregon, and it does not direct its activities at the residents of Oregon. (*Id.* at ¶¶ 11-12.)

FT owns and operates a genetic testing laboratory in Houston that allows customers to purchase a DNA kit online, collect DNA samples, and then mail the kit to Houston for analysis and genetic testing results. (*Id. at* ¶ 17.) FT genetic tests are conducted in compliance with state and federal law. (*Id.* at ¶ 18.) FT policies and operational documents are located in the Houston office. (*Id.* at ¶ 21.) If this case is litigated in Oregon, any trial testimony would require FT administrative and technical employees to travel to Oregon, thereby disrupting operations. (*Id.* at ¶ 22.) The litigation and trial of this case in Oregon will create an undue hardship for FT. (*Id.* at ¶ 23.)

The engineering team at FT investigated Bonneau's and Burgess's allegations and reviewed data regarding their use of the Family Tree website and genetic matching technology. (Au Decl. ¶ 3.) Bonneau created a Family Tree account on July 17, 2023 (*Id. at* ¶ 4.) In order to create an account with Family Tree in July 2023, Bonneau was required to agree to the 2023 TOS, attached to the Daniel Au Declaration as Exhibit A. (Au Decl. ¶¶ 6-9.) The Family Tree website required Bonneau to agree to the 2023 TOS by clicking a box which stated "I agree to the FamilyTreeDNA Terms of Service and Privacy Statement." (*Id.* at ¶ 8.)The terms "Terms of Service" and "Privacy Statement" were hyperlinked in blue and clearly presented immediately above the "Confirm and Proceed" page on the FT website. (*Id.* at ¶ 7.) Paragraph 7 of the Daniel Au Declaration contains a screen shot of the image that was presented to Bonneau when he agreed to the 2023 TOS as part of the account creation process at Family Tree.

Plaintiff Burgess, a New Mexico citizen, alleges that she purchased a genetic test kit from Family Tree in late 2023. Complaint at ¶¶ 10, 31. After initiating litigation, Burgess supplied



BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191

Family Tree with an email address (robbieburgess20022yahoo.com) and advised that she used the address to create an account with Family Tree. (Au Decl.¶ 5.) Using the email address she provided, Family Tree has not discovered any records indicating that Burgess created an account, interacted with Family Tree's website, or purchased a kit from Family Tree. (*Id.)* The Complaint contains no allegations that FT's conduct involving Burgess has any contact or connection to the State of Oregon.

## III. THIS COURT LACKS PERSONAL JURISDICTION OVER FT

The Court should dismiss the Complaint because the Court lacks personal jurisdiction over FT, a Texas Domestic Limited Partnership with its principal place of business located in Houston, Texas. General jurisdiction therefore does not apply, and nor does specific jurisdiction. Plaintiff alleges no facts showing that his claims arise out of any conduct that FT purposefully directed toward Oregon.

### A. Legal Standard

Under Fed. R. Civ. P. 12(b)(2), if this Court lacks personal jurisdiction over parties, then the parties must be dismissed from the case. "[T]he plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant[s]." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). "Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004); *see* Fed. R. Civ. P. 4(k)(1)(A).

Oregon's long-arm statute is coextensive with the Fourteenth Amendment's due-process clause, which means that the Court's inquiries into personal jurisdiction under the long-arm statute and the Fourteenth Amendment collapse into one. *Gray & Co. v. Firstenberg Machinery Co.*, 913



BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191

F.2d 758, 760 (9th Cir. 1990); *see* ORCP 4; *Siskiyou Properties, LLC v. Bennett Holdings, LC*, 13 Fed. App'x 553, 555 (9th Cir. 2001); *see also Hayden v. Shin-Etsu Handotai America, Inc.*, 80 F. Supp. 2d 1119, 1120 (D. Or. 1999) ("Oregon's jurisdictional statute confers personal jurisdiction coextensive with due process. . . . As a result, this court need only analyze whether exercising jurisdiction comports with due process."). To satisfy due process requirements, courts may exercise personal jurisdiction only if a defendant has minimum contacts with the forum such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quotations omitted).

Personal jurisdiction may only be found where a party has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Company v. Washington*, 326 U.S. 310, 316 (1945). Jurisdiction can be general or specific in nature. *Id.*; *see also Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008). Where a defendant is not incorporated or headquartered in the foreign state, and a defendant does not conduct its operations in the state, the Court lacks general personal jurisdiction over the defendant. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2017); *see also Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 262. Specific jurisdiction is proper where the suit "aris[es] out of or relate[s] to the defendant's contacts with the forum" "but only as to a narrower class of claims." *Daimler*, 571 U.S. at 127 (citation omitted); *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021).

**B. FT Is Not Subject to General Personal Jurisdiction**

The Court lacks general personal jurisdiction because FT is a Texas legal entity based exclusively in Houston. (Zawisza Decl., ¶¶4-5; *see also* Complaint ¶ 11). This means that the Court "presumptively lacks general personal jurisdiction." *Crouch v. Ruby Corp.*, 639 F. Supp.



BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191

3d 1065, 1075 (S.D. Cal. Nov. 7, 2022); *see also Daimler*, 571 U.S. at 137. The Complaint asserts that FT "does business within Oregon"; "transacts business in Oregon such that it has sufficient minimum contacts with Oregon"; has purposefully availed itself of Oregon markets; and because Bonneau's claims arise out of FT's "in-state actions." Complaint ¶ 11. None of these bare allegations support general personal jurisdiction because they fail to contend that FT should be considered "at home" in the State of Oregon. *Daimler*, 571 U.S. at 137. Instead, the Complaint generally alleges that FT, through its website, offers consumers genetic testing kits. Complaint ¶ 3.

For general jurisdiction to exist over a nonresident defendant such as FT, the defendant must engage in "continuous and systematic general business contacts," that "approximate physical presence" in the forum state, and this is an "exacting standard." *Schwarzenegger*, 374 F.3d at 801. Bonneau fails to meet such standard. For example, the Complaint does nothing to allege that FT directed advertising specifically at Oregon customers or that the advertising arose from Oregon-specific activity. Allegations that an Oregon resident can access FT's website is insufficient to establish general personal jurisdiction. *See, e.g., CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1075–76 (9th Cir. 2011) (declining to find general jurisdiction and concluding that if "the maintenance of an interactive website were sufficient to support general jurisdiction in every forum in which users interacted with the website, 'the eventual demise of all restrictions on the personal jurisdiction of state courts' would be the inevitable result") (internal citation omitted); *Fox v. Michael Berenis, Bootaholics, Inc.*, No. 3:17-cv-2066-SI, 2018 WL 6313003, at *3 (D. Or. Dec. 3, 2018) (declining general jurisdiction and finding that Florida corporation was not "at home" in Oregon, despite its website and marketing materials).



BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191

**C. Nor Do the Facts Establish Specific Personal Jurisdiction**

As stated above, in an effort to establish personal jurisdiction, Bonneau erroneously contends: (i) FT "does" and "transacts" business in Oregon such that it has sufficient minimum contacts with Oregon; (ii) FT has "purposely availed" itself of Oregon markets; (iii) and because Bonneau's claims arise out of FT's Oregon actions. Complaint ¶ 13. Yet the only nexus between Bonneau and FT arises out of Bonneau's voluntary decision to utilize FT's website and genetic testing laboratory located in Houston, Texas.

The following facts defeat personal jurisdiction:

- FT is a Texas company with its only place of business located in Houston, Texas. (Zawisza Decl., ¶¶4-5.)
- FT's genetic testing laboratory, website servers and corresponding operations are in Houston, Texas. (*Id.* at ¶¶4-6.)
- FT does not operate in Oregon, or send employees to Oregon to perform their job duties. (*Id.* at ¶ 7.)
- FT is not registered to do business in Oregon. (*Id.* at ¶ 8)
- FT does not market, advertise or otherwise solicit business in Oregon, or have sales representatives in Oregon. (*Id.* at ¶ ¶ 9-12.)
- FT has no registered agent or bank accounts in Oregon. (*Id.* at ¶¶ 10-11.)
- FT does not send marketing emails to Oregon specifically designed to generate new customers in Oregon, or use the U.S. mail service for the delivery of marketing publications in Oregon. (*Id.* at ¶ 16.)
- FT revenue generated by Oregon customers from 2018-2023 was less than 3% of the company's total revenue. (*Id.* at ¶ 15.)



BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191

Bonneau's utilization of FT's Houston, Texas resources cannot be characterized as FT's transaction of business in Oregon, merely because Bonneau was located in Oregon when he accessed FT's website. FT's website and services are available to residents throughout the United States and multiple foreign countries. (*Id.* at ¶ 14.) Additionally, the revenue generated by Oregon customers from 2018-2023 was less than 3% of FT's total revenue. (*Id.* at ¶ 15.)

The Declaration of Daniel Au demonstrates that Bonneau expressly agreed to FT's 2023 Terms of Service ("TOS") by affirmatively clicking a box that stated "I agree the FamilyTree DNA Terms of Service and Privacy Statement", which notified Bonneau that by clicking on the icon he would be agreeing to the effective FT TOS. (Au Decl. ¶¶ 6-9.) The 2023 TOS expressly provided that: "(a) the Services shall be deemed solely based in Texas; and (b) the Services shall be deemed a passive one that does not give rise to personal jurisdiction over Gene by Gene, either specific or general, in jurisdictions other than Texas." (Au Decl., Ex. A §22). These contractual terms correctly recite the jurisdictional status between the parties and communicated to Bonneau that only Texas courts would have personal jurisdiction over FT. Respectfully, the Court should enforce these terms. Indeed, federal courts enforce online agreements so long as the website presents the consumer with a realistic opportunity to review the terms of service, and include a physical manifestation of assent. *Fteja v. Facebook*, *Inc.*, 841 F. Supp. 2d 829, 839-40 (S.D.N.Y. 2012)

In the Ninth Circuit, Specific jurisdiction is only proper where (1) the defendant "purposefully availed" itself of or "purposefully direct[ed]" its activities toward the forum; (2) the claim "arises out of or relates to the defendant's forum-related activities"; and (3) the exercise of jurisdiction is "reasonable." *Schwarzenegger*, 374 F.3d at 802. Plaintiff must establish the first



BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191

two prongs, and if a plaintiff satisfies the first two prongs, the burden shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable. *Id.*

In cases alleging tortious activity, claims are analyzed under the "purposeful direction" framework, using the three-part effects test articulated in *Calder v. Jones*, 465 U.S. 783, 787 n.6 (1984); *Burri Law PA v. Skurla*, 35 F.4th 1207, 1213 (9th Cir. 2022); *Fatnani v. JPMorgan Chase Bank*, No. 3:23-cv-712-SI, 2024 WL 3611899, at *12–16 (D. Or. Aug. 1, 2024) (applying three-part effects test and dismissing claims). The "effects" test requires that a defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011). Moreover, "[d]ue process requires that a defendant be haled into court in a forum state based on his own affiliation with the [s]tate, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Walden*, 571 U.S. at 286.

**i. Bonneau Cannot Establish That FT "Expressly Aimed" its Conduct at Oregon**

Even if Bonneau can satisfy the first and third prongs of the "effects test," Bonneau cannot satisfy his burden that FT "expressly aimed" its conduct at Oregon. Operation of an interactive website does not, by itself, establish express aiming because every time a seller offered a product for sale through an interactive website, the seller would be subjecting itself to specific jurisdiction in every forum in which the website was visible, and that result would be too broad to comport with due process. *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1091 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 693 (2024). If a defendant's website itself is the only jurisdictional contact, a Court analyzes whether the website had a forum-specific focus or the defendant exhibited an intent to cultivate an audience in the forum. *Id.* at 1092.



BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191

Here, Bonneau does not advance any allegations exhibiting an intent to cultivate an audience in Oregon. The Complaint lacks any allegations concerning FT's conduct expressly aimed at Oregon residents, such as advertising or marketing materials, for example. In sum, the Complaint does nothing to distinguish Oregon from any other state. Perhaps it is unsurprising that the Complaint is devoid of any such facts because revenues derived from Oregon residents for the years 2018-2023 is represents less than 3% of FT's total revenue. Courts in the Ninth Circuit have dismissed cases under similar circumstances. *See., e.g., ThermoLife Int'l, LLC v. NetNutri.com LLC*, 813 Fed. Appx. 316, 318 (9th Cir. 2020) (affirming dismissal, in part, because less than 2% of defendant's overall sales revenue originated from sales to Arizona customers and therefor any contact with Arizona would be random, fortuitous, or attenuated) (internal citations and quotations omitted); *Heiting v. Marriott Int'l, Inc.*, 743 F. Supp. 3d 1163, 1171 (C.D. Cal. 2024) (dismissing complaint because plaintiff failed to sufficiently show that an interactive website was expressly targeting California as opposed to any other state or that the website prioritized and/or cultivated data gleaned from California users); *Crouch v. Ruby Corp.*, 639 F. Supp. 3d 1065, 1081 (S.D. Cal. 2022) (dismissing complaint for lack of personal jurisdiction, in part, because the defendants did not tailor any marketing or advertising material to California, feature any content or themes specific to California, or factually allege how the defendant targeted California).

**ii. Bonneau Cannot Establish That The Claim "Arises Out Of Or Relates To The Defendant's Forum-Related Activities"**

Bonneau similarly fails the second prong to establish specific personal jurisdiction. When examining whether a claim "arises out of" or "relates to" a defendant's forum-related activities, the Court must analyze a plaintiff's alleged injury and its connection to the forum-related activities in question. *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir.



BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191

2017) (discussing whether claim "arises out of" or "relates to" defendant's conduct); *Bristol-Myers Squibb Co.*, 582 U.S. at 262 (recognizing there must be an "affiliation between the forum and the underlying controversy"). For a claim to "arise out of" a defendant's business contacts, there must be a causal relationship between the claim and the alleged contact. *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 504–05 (9th Cir. 2023). This prong "incorporates real limits" on personal jurisdiction, "as it must to adequately protect defendants foreign to a forum." *Ford Motor Co.,* 592 U.S. at 362 (citation omitted). Accordingly, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Axiom Foods, Inc.*, 874 F.3d at 1068.

In *Yamashita*, the Ninth Circuit concluded that the plaintiff's injuries did not either arise out of or relate to the defendants' forum contacts, and the Court analyzed "but-for" causation in two ways. *Yamashita*, 62 F.4th at 506. First, the Court found that the plaintiff did not establish that the injuries arose out of any forum contacts because the plaintiff did not allege that the defendants shipped the subject product into the forum. *Id.* Second, the Court ruled that the plaintiff had not shown "relatedness" to the defendants' forum contacts due to the lack of connection to the specific subject product. *Id.* Similar to the plaintiff in *Yamashita*, Bonneau does not allege, and demonstrate that his claim "arises out of" or "relates to" FT's activities in Oregon. Indeed, Bonneau cannot show that FT creates any connection to Oregon, let alone a substantial connection.

The Complaint makes no connection between the alleged "install[ation] [of] the Meta Pixel on [FT's] Website" arose out of or relate to FT's contacts with Oregon. The Complaint's only allegations concerning Oregon are merely boilerplate assertions that FT "does business within" and "transacts business in" Oregon. Complaint ¶ 13. Bonneau alleges nothing further, and makes no allegations concerning causation. Even if Bonneau argues that no causal showing



BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191

is required under *Ford*, he nonetheless fails to demonstrate how his allegations related to FT's contacts with Oregon. *Ford Motor Co.*, 592 U.S. at 362 ("the phrase "relate to" incorporates real limits, as it must to adequately protect defendants foreign to a forum.")

Bonneau may attempt to rely on *Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025) for the proposition that the use of pixels or cookies are sufficient to satisfy that a plaintiff's claims "arise out of or relate to the defendant's contacts" with the forum state. In *Briskin*, the Court found that that installation of software onto "unsuspecting Californians devices" and "extracting personal data from them" was sufficient to satisfy this prong. *Id.* at 760. Importantly, and contrary to *Briskin*, Bonneau alleges that FT "chose to install the Meta Pixel on its Website" as opposed to installation on Bonneau's hardware or "devices." Complaint ¶¶ 19, 24. The Court should thus dismiss this case for lack of personal jurisdiction.

## IV. THE CASE SHOULD BE SUBMITTED TO BINDING ARBITRATION IF THE COURT FINDS PERSONAL JURISDICTION

If the Court decides that it does have personal jurisdiction over FT—which it should not—then this Court should stay this case and compel arbitration under FT's TOS.

### A. Legal Standard

"The Federal Arbitration Act (FAA) governs the enforceability of arbitration agreements in contracts involving interstate commerce." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013) (citing 9 U.S.C. § 1 *et seq.*); *R Source Corp. v. Sealevel Sys., Inc.*, 722 F. Supp. 3d 1144, 1146 (D. Or. 2024). The FAA establishes "a liberal federal policy favoring arbitration agreements." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505 (2018) (citation omitted); *see also Bridgetown Trucking, Inc. v. Acatech Sols., Inc.*, 197 F. Supp. 3d 1248, 1251 (D. Or. 2016) ("When a contract contains an arbitration clause, a presumption of arbitrability exists.") (citations omitted). Under the FAA, "[a] written provision in any ... contract evidencing



BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191

a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... or the refusal to perform the whole or any part thereof, ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This Court should analyze whether (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. *R Source Corp.*, 722 F. Supp. 3d at 1146 (internal quotations and citation omitted). If the answer to both of these questions is in the affirmative, the FAA requires this Court to enforce the arbitration agreement in accordance with its terms. *Id.* at 1147.

**B. The Parties Agreed to Arbitration**

Bonneau alleges that he purchased an FT genetic testing kit for his personal use in "late 2023." Complaint ¶ 27. FT records indicate that Bonneau created an account with FT and went through the onboarding process on July 17, 2023. (Au Decl. ¶ 4.). When Bonneau interacted with the Family Tree website on July 17, 2023, as part of the onboarding process, Bonneau was visually presented with the 2023 Terms of Service ("2023 TOS"). (*Id.* at ¶ 6.) As shown in the images embedded in the Declaration of Tat (Daniel) Au, when presented with the 2023 TOS, Bonneau was presented with a complete copy of the Terms of Service. (*Id.* at ¶¶ 7-8.) Bonneau was required to click "I agree" in order to continue his interaction with the site. (*Id.* at ¶ 8.) The button that Bonneau was required to click was prominently displayed above the "Continue and Proceed" button, and it states "I agree to the FamilyTreeDNA Terms of Service and Privacy Statement." The Terms of Service are hyperlinked in blue, a color distinct from the text of the "I agree" portion of the sentence.

The 2023 TOS states that if any dispute related to the services by FT cannot be resolved, Bonneau and FT:



BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191

> *** each agree to resolve any claim, dispute, or controversy (excluding any FamilyTreeDNA claims for injunctive or other equitable relief) arising out of or in connection with or relating to this Agreement, or the breach or alleged breach thereof (collectively, "Claims"), by binding arbitration by the American Arbitration Association ("AAA") in the city of Houston, TX under the commercial rules then in effect for the AAA, except as provided herein.
>
> *****
>
> All claims must be brought in the parties' individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding.

(Au Decl., Ex. A §23). The only exception to mandatory arbitration was a carve out for FT to seek injunctive relief in order to protect proprietary interests. (*Id.)*

Plaintiff alleges that Defendant violated O.R.S., 192.531 *et seq.*, and the 2023 TOS that Bonneau agreed to apply to this dispute and mandate resolution by arbitration. The above record confirms that Bonneau agreed to the 2023 TOS when he created his account. To create his account and utilize the FT website, Bonneau had to click on an icon that stated "I agree", which notified her that by clicking on the icon, she would be agreeing to the 2023 TOS. (Au Decl. ¶ 8); Ex. A §22). Courts in the Ninth Circuit have routinely compelled arbitration where users of a website affirmatively clicked to consent to terms of service that contained an arbitration provision. *See, e.g., Oberstein v. Live Nation Entm't, Inc.*, 60 F.4th 505 (9th Cir. 2023) (affirming dismiss in favor of compelled arbitration and discussing that the most straightforward application of mutual assent in contract formation is under "'clickwrap' agreements, in which a website presents users with specified contractual terms on a pop-up screen and users must check a box explicitly stating 'I agree' in order to proceed."); *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022) (stating that where "clickwrap" agreements, "in which a website presents users with specified contractual terms on a pop-up screen and users must check



BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191

a box explicitly stating 'I agree' in order to proceed" . . . "courts have routinely found clickwrap agreements enforceable.") (citing *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017); *Moyer v. Chegg, Inc.*, 22-CV-09123-JSW, 2023 WL 4771181 (N.D. Cal. July 25, 2023) (compelling arbitration where terms of use were "distinguished in bright blue, a clear indication of a hyperlink" and where the terms of use "were also located directly below the "Create account" action button). This Court should therefore compel arbitration.[2]

## V. IF THE COURT DOES NOT ENFORCE THE ARBITRATION PROVISION, THEN THE COURT SHOULD TRANSFER THE CASE TO THE SOUTHERN DISTRICT OF TEXAS

If the Court does not enforce the arbitration clause, which it should, then the Court should enforce the venue selection clause contained in 2023 TOS.

The 2023 TOS states as follows:

> You agree that: (a) the Services shall be deemed solely based in Texas; and (b) the Services shall be deemed a passive one that does not give rise to personal jurisdiction over Gene by Gene, either specific or general, in jurisdictions other than Texas. This Agreement and any dispute regarding the Services shall be governed by the laws of the State of Texas, USA, without regard to conflict of law provisions and you agree to exclusive personal jurisdiction and venue in the state and federal courts of the United States located in the State of Texas, City of Houston for any actions for which we retain the right to seek injunctive or other equitable relief in a court of competent jurisdiction to prevent the actual or threatened infringement, misappropriation or violation of our copyrights, trademarks, trade secrets, patents, or other intellectual property or proprietary rights, as set forth in the below Arbitration provision.

(Au Decl., Ex. A §22).

---

[2] The 2023 TOS mandate that Texas law applies. (Au Decl., Ex. A §22). Under Texas law, contract formation requires mutual assent. *Phillips v. Neutron Holdings, Inc.*, 3:18-CV-3382-S, 2019 WL 4861435 (N.D. Tex. Oct. 2, 2019); *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018). Oregon law, which should not be applied, similarly requires mutual assent for contract formation. *Homestyle Direct, LLC v. Dep't of Human Servs.*, 311 P.3d 487, 492 (Or. 2013).



BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191

Settled law holds that a mandatory forum selection clause is "*prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Chudner v. TransUnion Interactive, Inc.,* 626 F. Supp. 2d 1084, 1089 (D. Or. 2009) (citing *M/S Bremen v. Zapata Off–Shore Co.,* 92 S.Ct. 1907 (1972); *see also Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas,* 571 U.S. 49, 62-65 (2013) . The *M/S Bremen* standard "has been widely applied to forum selection clauses in general." *TransUnion Interactive, Inc.,* 626 F. Supp. 2d at 1089. Forum selection clauses may be held unenforceable under federal law if the litigant makes "a strong showing" that (1) its inclusion in a contract was the product of fraud or overreaching, (2) enforcement would contravene a strong public policy of the forum in which suit is brought, or (3) trial in the contractual forum will be so gravely difficult and inconvenient that the litigant will for all practical purposes be deprived of his day in court. *JPaulJones, L.P. v. Zurich Gen. Ins. Co. (China) Ltd.*, 533 F. Supp. 3d 999, 1005 (D. Or. 2021), *aff'd sub nom. JPaulJones, L.P. v. Zurich Ins. Co., (China) Ltd.*, 21-35365, 2022 WL 1135424 (9th Cir. Apr. 18, 2022) (citing *Gemini Techs., Inc. v. Smith & Wesson Corp.*, 931 F.3d 911, 915 (9th Cir. 2019)). Forum selection clauses should be analyzed under the federal transfer statute, 28 U.S.C. 1404(a). *Id.*, at 1004.

Here, no evidence exists to suggest that the 2023 TOS forum selection clause is unreasonable under the circumstances. The 2023 TOS provide a clear presentation of the forum selection clause in the body of the Terms of Services and under the heading "Applicable Law." The Complaint's allegations raise no inference of fraud, undue influence or unfair bargaining. *JPaulJones, L.P.*, 533 F. Supp. 3d at 1008.

Further, the 2023 TOS forum selection clause, requiring either litigation or arbitration in Houston, will not make it "so gravely difficult and inconvenient" that Bonneau would be



BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191

deprived of his day in court. This is especially so given that Bonneau agreed to the forum selection clause and thus makes this exception difficult to satisfy. *Id.* at 1008 (citing *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1091 (9th Cir. 2018). Finally, enforcement of the 2023 TOS forum selection clause will not contravene any law or public policy of this Court. Instead, said principles (namely, well-established contract law and the public policies behind it) weigh in favor of enforcing the clause. For example, Bonneau was not compelled to use FT's services upon reviewing the Houston, Texas forum selection provision. Moreover, "[w]hatever inconvenience" Bonneau purportedly would suffer by being forced to litigate in Texas was foreseeable at the time he agreed to the forum selection clause. *Atl. Marine Const. Co., Inc.*, 571 U.S. at 64.

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The Supreme Court has held that a "forum-selection clause, which represents the parties' agreement as to the most proper forum, should receive neither dispositive consideration ... nor no consideration ..., but rather the consideration for which Congress provided in § 1404(a)." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988).

The presence of a valid forum-selection clause alters a court's analysis when considering a motion to transfer under § 1404(a). *Paxton v. DISH Network, LLC,* 3:17-CV-01944-JE, 2018 WL 1947420 at *3 (D. Or. Apr. 24, 2018) (citing *Atl. Marine Const. Co., Inc.*, 571 U.S. at 63). Unlike in situations where there is no valid forum-selection clause, the court does not consider the plaintiff's choice of forum or arguments regarding the parties' private interests. *Id.* (internal citations omitted). Instead, "as the party defying the forum-selection clause, the plaintiff bears



BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191

the burden of establishing that transfer to the forum for which the parties bargained is unwarranted" and "a district court may consider arguments about public-interest factors only." *Id.* (internal citations omitted). As a result, the court "should ordinarily transfer the case to the forum specified in that clause [and] [o]nly under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Id.* (internal citations omitted). The public-interest factors a court must consider include: (1) administrative difficulties flowing from court congestion; (2) imposition of jury duty on people of a community that has no relation to the controversy; (3) local interest in having localized controversies decided at home; (4) the interest in having a diversity case tried in a forum familiar with the law that governs the action; and (5) the avoidance of unnecessary problems in conflicts of law. *Id.* (citing *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) *superseded by statute on other grounds by* 28 U.S.C. § 1391).

When applied to the instant case, the above factors demonstrate that venue is appropriate in Texas as set forth in the 2023 TOS forum selection clause. No evidence suggests that the TOS unfairly prejudice Bonneau or offend any corresponding law or public policy. None of the public policy factors weigh in favor of not transferring this litigation, especially when the Court should ordinarily transfer the case to the forum specified in the forum selection clause. Bonneau cannot properly identify any court congestion in the Southern District of Texas. The community of the Southern District of Texas has an interest in this dispute since FT is located in Texas. Bonneau was aware of the forum selection provision when he agreed to the 2023 TOS, and a court in the Southern District of Texas possesses the ability to resolve matters involving Oregon law, if Oregon law applies. *DISH Network, LLC*, 2018 WL 1947420 at *5. In sum, the public-interest



BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191

factors here do not "overwhelmingly disfavor" transfer and this is not the "exceptional case" that warrants disregard of a valid forum-selection clause. *Id.*

## VI. PLAINTIFF BURGESS SHOULD BE DISMISSED FOR AN INDEPENDENT REASON

The Court should dismiss Burgess for the independent reason that Oregon's statute governing personal jurisdiction does not allow for the joinder of Burgess. Burgess alleges that she is a New Mexico citizen and that in "late 2023," she purchased one of FT's genetic testing kits for her own personal use. Complaint ¶¶ 10, 31. Under Oregon law, "in any action brought in reliance upon jurisdictional grounds stated in sections B through L, there cannot be joined in the same action any other claim or cause against the defendant unless grounds exist under this rule, or other rule or statute, for personal jurisdiction over the defendant as to the claim or cause to be joined." Or. R. Civ. P. 4(N). Here, the only allegations concerning Oregon jurisdiction are based on FT's alleged contacts with Oregon and because Bonneau's claims allegedly arise out of FT's Oregon's actions. Complaint ¶ 13. Thus, the only basis for jurisdiction, according to Plaintiff's, is the alleged relationship between Bonneau and FT that purportedly gives rise to personal jurisdiction in Oregon. Oregon's personal jurisdiction statute forbids precisely this scenario, and Burgess should therefore be dismissed.

The Court should thus dismiss Burgess.

## VII. CONCLUSION

FT has operated entirely within Texas, and Bonneau fails to establish personal jurisdiction over the Defendant. Accordingly, Defendant respectfully requests the dismissal of this action based on a lack of personal jurisdiction and for violating Or. R. Civ. P. 4(N).

In the alternative, Plaintiff agreed to the 2023 TOS that contains a binding arbitration clause. If the Court finds that it does possess personal jurisdiction over Bonneau, then FT



BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191

requests an order that compels arbitration. In the alternative, the case should be transferred to the U.S. District Court for the Southern District of Texas. Finally, Burgess, a New Mexico citizen, should be dismissed because her presence in this matter is afoul of Or. R. Civ. P. 4(N).

WHEREFORE, Defendant, Gene by Gene, Ltd., d/b/a FamilyTreeDNA, respectfully requests that the Court grant this motion, dismissing the action for a lack of personal jurisdiction over Defendant, in the alternative, entering an order that compels arbitration, or that transfers the case to the U.S. District Court for the Southern District of Texas, and that dismisses Plaintiff Burgess with prejudice while the Court grants all other relief which the Court deems just and equitable.

DATED this 29th day of May, 2025.

BUCHALTER
A Professional Corporation

By s/ Daniel L. Lis
Daniel L. Lis, OSB No. 162257
Email: dlis@buchalter.com
Alexandra M. Shulman, OSB No. 152784
Email: ashulman@buchalter.com
Telephone: 503.226.1191

David J. Tecson, *Pro Hac Vice* Admission
Email: dtecson@chuhak.com
Adrienne M. Arlan, *Pro Hac Vice* Admission
Email: aarlan@chuhak.com
Telephone: 312.444.9300

Attorneys for Defendant